UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| | | PRISONER |
| DUANE ZIEMBA | : | CIVIL NO. 3:02CV1609 (AWT) (DFM) |
| v. | : | |
| MARGARET CLARK, ET AL. | : | AUGUST 11, 2004 |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**I.     FACTS**

By Amended Complaint dated June 21, 2003 ("the Complaint") the plaintiff, an inmate committed to the custody of the Department of Correction for the State of Connecticut ("DOC"), originally commenced this action pursuant to 42 U.S.C. § 1983 against five DOC officials: former DOC Commissioner Armstrong, former Warden Myers, Nurse Margaret Clark, Captain William Faneuff, and Lieutenant Michael Holland. In the Court's Ruling on Defendants' Motion to Dismiss dated December 4, 2003 (AWT), all claims against defendants Faneuff and Holland were dismissed.

Plaintiff alleges violations of the Constitution relating to several alleged incidents occurring at Northern Correctional Institution ("Northern"). In particular, plaintiff alleges: (1) that he and his family members wrote to defendant Armstrong complaining about retaliatory actions at Northern and that defendant Armstrong failed to stop the retaliatory actions (Complaint, paras. 11-17); (2) that on October 6, 1999, defendant Clark told the plaintiff that she was going to have him chained down because she was suing him and then falsified records to indicate that the plaintiff was kicking his cell door (Complaint, paras. 18-19); and (3) that

Officers Faneuff and Holland threatened the plaintiff; sprayed him with pepper spray and pressure point pain compression for no reason; and then confined him in four point restraints for an unreasonable period of time (Complaint, paras. 20-31).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the three remaining defendants submit that they are entitled to summary judgment on a number of legal grounds. First, plaintiff's action against defendants Armstrong and Myers is legally deficient because the plaintiff cannot demonstrate the requisite personal involvement of these defendants in the alleged constitutional violation(s). Additionally, based on the uncontroverted facts, the plaintiff cannot demonstrate a viable constitutional claim for excessive force against defendant Clark. Finally, even if the Court indulges in the assumption that the plaintiff's constitutional rights were somehow violated during this incident(s), all of the defendants would remain entitled to summary judgment on the basis of Qualified Immunity.

## II.     STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment "…if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. A "material fact" is one whose resolution will affect the ultimate

determination of the case. Id. In further comment regarding the use of summary judgment, the Supreme Court has stated:

> summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules, as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.

Celotex, Corp. v. Catrett, 477, U.S. 317, 327 (1986).

Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," Capital Imaging Assocs. v. Mohawk Valley Medical Assoc., 996 F.2d 537, 541 (2d Cir.), cert. denied, 510 U.S. 497 (1993), and to "isolate and dispose of factually unsupported claims." Celotex Corp., at 323-324. "Summary Judgment serves as the ultimate screen to weed out truly unsubstantiated lawsuits prior to trial." Crawford-El v. Britton, 523 U.S. 574, 118 S. Ct. 1584, 1598, 140 L.Ed.2d 759 (1998).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Those facts that are material fact will be identified by the substantive law governing the case. Anderson, 477 U.S. at 248. Once the moving party meets its burden, the burden shifts to the non-moving party.

To defeat a motion for summary judgment, the non-moving party may not merely rely upon unsupported allegations made in their complaint, nor rely on "mere speculation or conjecture" to overcome a motion for summary judgment. Knight v. Fire Insurance Company, 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment. Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999). Additionally, the evidence presented in opposition to summary judgment must be presented in a

manner consistent with its admissibility at trial. See First National Bank Co. of Clinton, Ill. V. Insurance Co. of North America, 606 F.2d 760 (7th Cir. (1979) (in ruling on summary judgment motion, the Court properly relied upon documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to the litigants from third person, and hearsay which does not fall under one or more exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not be properly considered. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct 1598 2 L.Ed.2d 142 (1970); Benyene v. Coleman Security Service, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stansy Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941). Moreover, plaintiff must point to "specific facts showing that there is a genuine issue for trial." Rule 56(e); Anderson, 477 U.S. at 248; see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (Party may not rely on conclusory statements or an argument that the affidavits in support of the motion are not credible). Plaintiff must also produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).

### III. PLAINTIFF'S CLAIMS AGAINST THE DEFENDANTS MUST BE DISMISSED DUE TO A LACK OF PERSONAL INVOLVEMENT IN THE ALLEGED CONSTITUTION VIOLATIONS

In order to prevail on a claim under Section 1983 against an individual, a plaintiff must prove that the defendant (1) acted under color of state law, (2) in a manner that deprived the plaintiff of "any rights, privileges, or immunity secured by the Constitution." 42 U.S.C. § 1983, see Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912-13, 63 L.Ed.2d 420 (1981). Section 1983 imposes liability for "conduct which 'subjects or causes to be subjected' the plaintiff to a deprivation of a right secured by the Constitution and laws." Rizzo v. Goode, 423 U.S. 362, 370-71, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976). Accordingly, "personal

involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under [Section] 1983." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). A plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); and plaintiff must prove a tangible connection between the acts of the defendant and the injuries suffered. Bass v. Jackson, 790 F.2d 260, 262 (2d Cir. 1986). In the present case, the plaintiff makes a number of specific allegations that are directed against defendants Clark and Officer Faneuff and Holland. (See Complaint). However, he fails to allege (and cannot present any evidence) to demonstrate the personal involvement of defendants Armstrong and Myers in any of his claims. Accordingly, these defendants are entitled to summary judgment.

### A. Commissioner Armstrong and Warden Myers

While the plaintiff alleges that he complained to defendants Armstrong and Myers about "retaliation" at Northern, the only specific allegation the plaintiff makes concerns an incident, or series of incidents, that occurred on October 6, 1999. (See Complaint). In October, 1999, defendant Armstrong was the Commissioner of the DOC and worked primarily out of the central DOC office in Wethersfield, Connecticut. (Attachment A, Affidavit of Defendant Armstrong, paras. 2-3). There is no evidence that defendant Armstrong was at Northern on the pertinent dates of the alleged incident(s) in October, 1999 and there is no evidence that he had any involvement or notice of these incident(s) involving inmate Ziemba. (Id., para. 10). Larry Myers was the Warden at Northern in October, 1999. (Attachment B, Affidavit of Defendant Myers, para. 2). He also had no personal involvement in the pertinent incident(s) of October, 1999 and played no role in the decisions made by Northern correctional staff during the incident(s) of October 6, 1999. (Id., para. 6).

5

Plaintiff has named former Commissioner Armstrong and former Warden Myers as defendants clearly on the basis of their supervisory position(s) within the DOC. However, it is well established that a supervisor may <u>not</u> be held liable under Section 1983 merely because [they were] in a high position of authority in the prison system. <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994). Moreover, even if his subordinate allegedly committed a constitutional tort, a supervisor cannot be held liable under Section 1983. <u>Leonard v. Poe</u>, 282 F.3d 123, 140 (2d Cir. 2002). The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required. <u>Al-Jundi v. Estate of Rockefeller</u>, 885 F.2d 1060, 1065 (2d Cir. 1989) quoting <u>Johnson v. Glick</u>, 481 F.2d 1023, 1034 (2d Cir. 1983):

> A supervisory official may be personally involved in a section 1983 violation in several ways: (1) the official may have directly participated in the violation; (2) the official, after learning of the violation, may have failed to remedy the wrong; (3) the official may have created a policy or custom under which unconstitutional practices occurred; (4) the official may have been grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official may have exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. See *Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir 1995)*; see also *Williams v. Smith, 781 F.2d 319, 323-34 (2d Cir. 1986).*

In this case, there are no facts supporting liability against defendants Armstrong and Myers on any of the foregoing theories. In his Complaint, the plaintiff apparently attempts to assert a claim for supervisory liability against defendants Armstrong and Myers based on prongs (2) and (5) of the above standard. For instance, the plaintiff alleges as follows:

> 11. Pamela Ziemba, the plaintiff's mother, she sent defendant Armstrong a letter dated September 1, 1998. Which addresses the very serious retaliation being inflicted against the plaintiff by his agents. At the end of this letter she stated the following: "My son is being destroyed, please step in, please, you are the only one to stop this travesty." Defendant Armstrong, the Commissioner and the Supervisory Official, he completely failed to act on this letter and failed to take action to stop his agents serious retaliation against the plaintiff. Inter Alia, he failed to "step in" and remedy the wrong, and he was grossly negligent in supervising his subordinates who committed the wrongful acts, and he exhibited deliberate indifference to the rights of

      the plaintiff by failing to act on the information indicating that Unconstitutional acts were occurring.

12. The plaintiff personally sent defendant Armstrong letters dated: September 1, 3, 8, 14, 17, 24 and 25, 1998, October 6 and 16, 1998, November 13, 14 and 17, 1998, December 16, 1998, January 21, 1999, February 8 and 16, 1999, June 1, 3 and 25, 1999, August 10, 22 and 27, 1999, and September 1, 8, 14 and 15, 1999. These letters very specifically informed defendant Armstrong of the serious acts of Unconstitutional retaliation being inflicted against the plaintiff, directly by his agents. Inter Alia, these letters pleaded with him to step in, to take steps, to investigate, and stop the retaliation. Defendant Armstrong completely failed to take action, as the Commissioner, to stop the Unconstitutional acts of serious retaliation.

13. Defendant Armstrong's own Security Division investigation S.D. 98-38, clearly addresses how in fact his agents were inflicting very serious acts of retaliation against the plaintiff. That excessive use of force was used, that three officers failed to truthfully report what took place, and that the Medical Department at Northern C.I. was inattentive to the plaintiff's medical needs. Defendant Armstrong failed to act on these facts, and he knowingly left the plaintiff in the extremely hostile environment at Northern C.I. He promoted for his agents Unconstitutional retaliation to continue and to escalate against the plaintiff.

14. The retaliation, Unconstitutional violations, were inflicted against the plaintiff, due to the plaintiff exercising his Constitutional protected First Amendment rights, by filing lawsuits, complaints and grievances. Lawsuits: Ziemba v. Wezner, 3:98CV2370 (DFM) and Ziemba v. Armstrong, 3:98CV2344 (JCH)(HBF), which are evidence in this case.

15. Verbally, and through numerous letters, and disciplinary appeals, and complaints, and grievances, the Warden of Northern C.I. Defendant Myers, was specifically informed and made aware of the serious Unconstitutional retaliation by his agents against the plaintiff. Defendant Myers, as the Warden, and the Supervisory Official, just like defendant Armstrong, he completely failed to take action to stop the acts of serious retaliation and violations. And he was grossly negligent in supervising his subordinates who committed the wrongful acts, and he exhibited deliberate indifference to the rights of the plaintiff by failing to act on the information indicating that Unconstitutional acts were occurring.

16. Additionally, the plaintiff's family members, repeatedly called defendant Armstrong and Myers reporting the violations. Each and every call they failed to return, act on, and they each exhibited deliberate indifference to the rights of the plaintiff.

Plaintiff's attempt to impose supervisory liability on defendants Armstrong and Myers based on this theory (or theories) is legally unfounded for a number of reasons. First and foremost, these theories require that the supervisory official receive notice or information of an *ongoing constitutional violation* and fail to act appropriately on that information or knowledge. See <u>Wright v. Smith</u>, 21 F.3d 496, 502 (2d Cir. 1994) (While Commissioner Coughlin received a letter from the plaintiff which complained generally about the conditions of his confinement, the Commissioner was not put on actual or constructive notice of the specific violation); <u>Showers v. Eastmond</u>, 2001 U.S. Dist. LEXIS 6473 (S.D.N.Y. 2001) (No personal involvement found for Correctional Captain because he learned of the incident after the fact and was not in a position to present it); <u>Crowder v. Lash</u>, 687 F.2d 996, 1006 (7th Cir. 1982) (Commissioner's general knowledge of prison conditions and receipt of letters from plaintiff insufficient to impose liability). In the present case, the plaintiff asserts that defendant Clark and Officers Faneuff and Holland utilized excessive force during a discrete incident that occurred on October 6, 1999. It is uncontroverted that defendants Armstrong and Myers had no knowledge or notice of this incident. (See Attachments A, B).

Despite the above, plaintiff apparently theorizes that he was the subject of ongoing "retaliation" at Northern and that he provided notice of this treatment by way of letters and grievances to defendants Armstrong and Myers and they failed to act on that information. (See Complaint, paras. 11-16). However, this theory fails. The Second Circuit has appropriately recognized "the ease with which claims of retaliation may be fabricated, [and the need to] examine prisoners' claims of retaliation with care." <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995). Accordingly, retaliation claims are subject to the standard that even in a pro se civil rights action, vague and conclusory allegations are insufficient to state a cause of action.

Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (A complaint which alleges retaliation in wholly conclusory terms may be safely dismissed on the pleading alone.); see also Barr v. Abrams, 810 F.2d 358, 3673 (2d Cir. 1987) (Complaints relying on civil rights statutes are insufficient unless they contain some specific allegations.) Utilizing this heightened standard, plaintiff's retaliation claims are fatally vague and conclusory. The plaintiff repeatedly asserts that correctional officials inflicted severe acts of retaliation against him. (See Complaint). However, the plaintiff fails to identify any individuals or details or specific complaints to support these conclusory allegations. He also fails to specify the particulars of the "notice" that he provided to defendants Armstrong and Myers.

The only specific allegation the plaintiff makes concerns DOC Security Division Investigation No. 98-38. (Complaint, para. 13). This investigation (see Attachment C) concerned an incident that occurred at Northern in August, 1998 where the plaintiff was allegedly struck in the face by Captain Mangiafico while being placed into four point restraints. As a result of this investigation, it was found that Captain Mangiafico exercised poor judgment and he was disciplined and transferred to a different correctional facility (Attachment A, Armstrong Affidavit, paras. 6, 7). While this incident of August, 1998 may suffice to put Commissioner Armstrong on notice that *Captain Mangiafico failed to use proper judgment during that particular incident in August, 1998*, it clearly fails to support a conclusion that defendant Armstrong was on notice of ongoing retaliation. At the very most, this August, 1998 incident put Commissioner Armstrong on notice of an isolated incident of misconduct involving one correctional official who was subsequently transferred out of Northern. This alone hardly supports a conclusion that Commissioner Armstrong was on notice of ongoing and continuing "retaliation."

Concerning Warden Myers, he was not the Warden of Northern in August, 1998; he did not participate in the Security Division Investigation or imposition of discipline to Captain Mangiafico; and Captain Mangiafico was not employed at Northern when he took over as Warden in February, 1999. (Attachment B, Myers Affidavit, paras. 4-5). In fact, *defendant Myers did not become Warden at Northern until February 1, 1999,* approximately seven months after this incident involving Captain Mangiafico. (Attachment B, Myers Affidavit, para. 3). Therefore, it is unfounded to suggest that this incident of August, 1998 placed him on notice of ongoing and continuing retaliation. Indeed, in regard to both supervisory defendants, plaintiff cannot point to a single letter, or grievance, or complaint which places the defendants on specific notice of the incidents that are set forth in his Complaint.[1] Moreover, even if it is assumed for sake of argument that the plaintiff complained about general prison conditions, such "notice" is clearly insufficient to impose supervisory liability on defendants Armstrong and Myers. See Wright v. Smith, 21 F.3d 495, 502 (2d Cir. 1994) (While Commissioner received a letter which complained generally about conditions of confinement, the Commissioner was not put on notice of the specific violation); Wright v. Coughlin, 31 F. Supp. 2d 301, 331 (W.D.N.Y. 1998) (Simply receiving letters or complaints does not render an individual personally liable); Woods v. Goord, 1998 U.S. Dist. LEXIS 16664 (S.D.N.Y. October 23, 1993) (same); Safadi v. Almanzar, 2000 U.S. Dist. LEXIS 16968 (S.D.N.Y. November 22, 2000) (Prison officials are not omniscient).

---

[1] Plaintiff alleges that he filed multiple grievances complaining that he had been left in a cell with a broken toilet. However, the video of this incident proves this claim to be untrue. (Attachment D, Videotape). Plaintiff also alleges that defendants Armstrong and Myers were on notice of this "ongoing retaliation" based on his filing of two other lawsuits. (Complaint, para. 14). This argument is untenable as the defendants vigorously deny the baseless allegations set forth in those suits, which remain pending. See, e.g., Eklund v. Hardiman, 580 F. Supp. 410 (N.D. Ill., 1984) (Prisoner litigation is common and prior complaints do not render [the Warden] an insurer as to the third one filed).

Further, the evidence demonstrates that the plaintiff's complaints were addressed by DOC officials. Specifically, plaintiff's various complaints concerning denial of medical care at Northern were investigated in October, 1998 by DOC's Director of Medical Services, Dr. Edward Blanchette. (Attachment E, Blanchette Report, 10/26/98).[2] Dr. Blanchette found that despite the plaintiff's allegations that medical care was denied to him on a number of occasions, the medical record clearly documented an appropriate and timely response to all of his medical/mental health requests. (Id.) Based on his investigation, Dr. Blanchette further concluded that the evidence strongly suggested that the plaintiff fabricated an incident in which he alleged that correctional officials attempted to "murder" him by placing razor blades in his food. (Id.)

In sum, it is uncontroverted that defendants Armstrong and Myers were not personally involved in the incidents alleged in plaintiff's Complaint and it is clear that the plaintiff cannot assert a viable claim against the defendants based on their supervisory positions within the DOC. Indeed, the plaintiff cannot put forth any competent evidence to suggest that there was a pattern of "retaliation" against him at Northern. Additionally, plaintiff's allegations of denial of medical care and "attempted murder" at Northern were investigated by DOC officials and found to be false. As a result, contrary to plaintiff's theory supporting supervisory liability, the supervisory defendants were <u>not</u> on notice of a pattern of ongoing retaliation but rather were on notice that the plaintiff was prone to fantastic allegations regarding misconduct by correctional officials. For the foregoing reasons, defendants Armstrong and Myers are entitled to summary judgment.

---

[2] As well as a fantastic allegation of "attempted murder."

### B. Plaintiff Has Failed To Assert A Viable Action Against Defendant Nurse Clark

The only allegations directed against defendant Clark are found in paragraphs 18 and 19 of the plaintiff's Complaint. Specifically, the plaintiff alleges:

18. Defendant Clark, on October 6, 1999, she viciously told the plaintiff that she is having him chained down, because he is suing her. Please see lawsuit No. 3:98CV2344 (JCH)(HBF), where Clark is also a defendant, "being sued".

19. Maliciously and sadistically, in sole vicious retaliation, defendant Clark falsified documents and claimed that the plaintiff was kicking a door. In order to unjustly have him "chained down", four pointed to a bed frame.

Based on these allegations, it is unclear what constitutional claim the plaintiff asserts against defendant Clark. Presumably, the plaintiff asserts an Eighth Amendment claim for excessive force based on her participation in the plaintiff's placement into four point restraints on October 6, 1999. However, this claim clearly fails because, as is clearly detailed in the enclosed videotape of the October 6, 1999 incident(s) (Attachment D), and in the pertinent incident reports, *defendant Clark played no role whatsoever in plaintiff's placement into four point restraints on October 6, 1999*. To the contrary, the videotape clearly shows that at approximately 2:20 p.m., Lieutenant Casey, a member of Northern's custody staff, made the decision to place the plaintiff into four point restraints (Id.; see also Attachment F, Casey Incident Report, 10/6/99). Due to the plaintiff's non-compliance, this order was effectuated by Lieutenant Holland and a cell extraction team (Id.). While the plaintiff is restrained in a medical cell, and is seen by medical representatives as part of the process, *defendant Clark is never present, or seen, during this incident*. (Id.)

Interpreting the plaintiff's allegations in the most favorable light, presumably, the plaintiff asserts that defendant Clark participated in the restraint by "falsifying documents" to

12

unjustly have him placed into four point restraints.[3] (Complaint, para. 19). However, this assertion is simply not true as the plaintiff's misbehavior while in the medical cell was <u>not</u> reported to correctional supervisors by Nurse Clark, but rather by correctional officer Wilbur Strozier. (Attachment G, Strozier Disciplinary Report, 10/6/99; Attachment H, Strozier Incident Report, 10/6/99). Officer Strozier witnessed the plaintiff punch the cell door with his fists and witnessed the plaintiff continuously kick the cell door with his injured foot. (<u>Id</u>.) Officer Strozier notified Lieutenant Casey, who responded, and made the determination to place the plaintiff into four point restraints. (<u>Id</u>.; Videotape).

In sum, there is simply no evidence to support a claim that defendant Clark violated the plaintiff's constitutional rights during this incident of October 6, 1999.

### IV. ALL OF THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY

The qualified immunity defense is a well-established doctrine that protects government officials performing discretionary functions from liability for civil damages, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have know." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); see also <u>Siegert v. Gilley</u>, 500 U.S. 226, 111 S.Ct. 1789, reh'g denied 111 S.Ct. 2930 (1991). Even where the contours of the plaintiff's federal rights are clearly established at the time of the defendant's acts, "the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." <u>Robinson v. Via</u>, 821 F.2d 913, 921

---

[3] Even if this assertion was assumed to be true (which it is not), it is questionable whether the "falsification" of documents would constitute a claim of constitutional magnitude. See, e.g., <u>Sommer v. Dixon</u>, 709 F.2d 173, 174-75 (2d Cir. 1983) (The filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which subsequently occur).

(2d Cir. 1987). As our Court of Appeals has observed, "the standard governing the availability of this defense has evolved into one of objective reasonableness, designed to 'permit the resolution of many insubstantial claims on summary judgment.'" Robinson, supra at 290 (quoting Harlow, 456 U.S. at 818).

Recently, the Supreme Court has reiterated that a qualified immunity defense should be ruled upon:

> … early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed 2d 411 (1985).  The privilege is an "immunity from suit rather than a mere defense to liability; and like an absolute immunity; it is effectively lost if a case is erroneously permitted to go to trial." Ibid.  As a result "we repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curium).

Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156 (2001); see also, Cartier v. Lussier, 955 F.2d 841, 843 (2d Cir. 1992).

In Saucier, plaintiff was a demonstrator who was arrested by a military police officer as he attempted to unfurl a banner at an event at which the Vice President Gore was to speak. 121 S.Ct. at 2154. As he did so, officers grabbed him from behind, one on each arm, and removed him half-walking, half-dragging him with his feet "barely touching the ground" to a military van where he was shoved or thrown inside. Id.  He brought an action against the officers alleging, inter alia, excessive force.

While the district court and Court of Appeals for the Ninth Circuit denied Officer Saucier's qualified immunity defense on the basis that there existed disputed issues of material fact as to whether excessive force was used, the Supreme Court reversed and remanded.  In doing so, the Court emphasized that the qualified immunity analysis could not be merged into the question of whether unreasonable force was used in making the arrest. Id. at 2158.

> The qualified immunity inquiry … has a further dimension. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Id.

### A.   Nurse Clark

While it calls for an expansive interpretation of plaintiff's allegations, presumably, the plaintiff asserts an Eighth Amendment claim against defendant Clark for participating in the plaintiff's placement into four point restraints on October 6, 1999. Applying the qualified immunity analysis to this claim, it is evident that the plaintiff is unable to pass the threshold question in the qualified immunity analysis: do the facts alleged show that the defendant's conduct violated a constitutional right? County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1988); see also, Wilson v. Layne, 526 U.S. 603, 609, 199 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

42 U.S.C. § 1983 provides for liability for the deprivation, under the color of state law, "of any rights, privileges or immunities secured by the Constitution." The Eighth Amendment sets constitutional limits on conditions of imprisonment. "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however. After incarceration, only the 'unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 975 S.Ct. 1401, 51 L.Ed.2d 711 (1977)).

To demonstrate an Eighth Amendment violation, a plaintiff must make two showings. First, the alleged punishment must be "objectively, sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Wilson v. Seitzer, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). The objective component is "context specific, turning upon 'contemporary standards of decency.'" Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999) (quoting Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

To satisfy the subjective requirement, the inmate must show that the prison officials' actions were characterized by "wantonness." Davidson v. Flynn, 32 F.2d 27, 29 (2d Cir. 1994); Whitley v. Albers, 475 U.S. at 319. In excessive force cases, the "wantonness" inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Blyden v. Mancusi, 186 F.3d at 262 (quoting Hudson v. McMillian, 503 U.S. at 7). "Because decisions to use force often are made under great pressure and involve competing interests the good-faith standard is appropriate." Blyden v. Mancusi, 186 F.3d at 263.

While a significant injury is not a prerequisite to an Eighth Amendment violation, "a *de minimus* use of force will rarely suffice to state a constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates a prisoner's constitutional rights." Id., (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Applying these standards to Ziemba's claim of excessive force against defendant Clark, it is evident that no constitutional claim has been stated in the first instance. The plaintiff cannot demonstrate that his placement into restraints was "objectively, sufficiently serious" or that

16

prison officials' actions were characterized by "wantonness." As detailed, the decision to place the plaintiff into four point restraints was made by Northern custodial staff and there is no evidence that defendant Clark played any role in this decision.[4] Accordingly, she is entitled to judgment in her favor.

Even if it is accepted, for the sake of argument, that the plaintiff has alleged a cognizable claim of excessive force violative of the Eighth Amendment, the second part of the qualified immunity analysis dictates that defendant Clark would be entitled to judgment in her favor in this case. "[E]ven where the law and the scope of permissible official conduct are clearly established, the defense of qualified immunity will protect a government official if it was 'objectively reasonable' for him to believe his acts were lawful." Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987). It is frequently stated that the doctrine of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 340 (1986). "The objective reasonableness test is met – and the defendant is entitled to immunity – if 'officers of reasonable competence could disagree' on the legality of the defendant's action." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).

The most compelling evidence as to the reasonableness of Nurse Clark's conduct with respect to inmate Ziemba's allegations is Correctional Officer Strozier's Incident Report and Disciplinary Report. (See Attachments G and H). Plaintiff alleges that defendant Clark falsified records to claim that he was kicking the cell door in order to unjustly have him chained down. (Complaint, para. 19). As previously discussed, this allegation is untrue. However, assuming, for the sake of argument, that this allegation was true, based on Officer Strozier's reports, it is

---

[4] In fact, if the custodial staff who placed the plaintiff into four point restraints were defendants in this case (which they are not), they would clearly be entitled to qualified immunity.

17

obvious that defendant Clark's report of plaintiff's misconduct *was true and accurate* as he personally witnessed the plaintiff "continuously kicking his cell door." (See Attachments G and H). Accordingly, it would certainly have been reasonable for defendant Clark to report this conduct and as a result, she would be entitled to qualified immunity.

### B. Defendants Armstrong And Myers Are Also Entitled To Qualified Immunity

As discussed, where a qualified immunity defense is raised, a court must make a two-fold inquiry. First, the court must determine whether the facts, "taken in the light most favorable to the party asserting the injury, … show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201, 150 L.Ed.2d 272, 121 S.Ct. 2151 (2001). Second, even where such a constitutional right has been violated, the government employee is entitled to qualified immunity "'if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001)); see also Giacalone v. Abrams, 850 F.2d 79 (2d Cir. 1988).

It strains the imagination to suggest that any of the defendants violated the plaintiff's constitutional rights during this incident(s). However, even if this assumption is made, it cannot be reasonably argued that defendants Armstrong and Myers--who did not participate in the events alleged in plaintiff's lawsuit--acted in an objectively unreasonable manner. To the contrary, as DOC supervisors, they had no knowledge or notice of the incidents set forth in plaintiff's Complaint and appropriately relied on Northern correctional staff to properly discharge their responsibilities during this incident(s). (Attachment A, para. 12; Attachment B, para. 6). As such, they would be entitled to qualified immunity. Johnson v. Abate, 2000 U.S.

Dist. LEXIS 19047 (E.D.N.Y., December 22, 2000) (Since there is no evidence to establish Warden's personal involvement in the incident, his actions could not be considered anything but objectively reasonable under the circumstances).

## V.  CONCLUSION

For all of the foregoing reasons, the undersigned defendants urge the Court to grant summary judgment in their favor.

```
                              DEFENDANTS,
                              Margaret Clark, et al.

                              RICHARD BLUMENTHAL
                              ATTORNEY GENERAL

                         BY:  ___/s/_____
                              Matthew B. Beizer
                              Assistant Attorney General
                              110 Sherman Street
                              Hartford, CT  06105
                              Federal Bar #ct16304
                              E-Mail: matthew.beizer@po.state.ct.us
                              Tel:  (860) 808-5450
                              Fax:  (860) 808-5591
```

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following this 11th day of August, 2004:

Duane Ziemba #128963
Northern Correctional Institution
P.O. Box 665
Somers, CT  06071

```
                              ____/s/_____
                              Matthew B. Beizer
                              Assistant Attorney General
```