## United States District Court
## District Of Connecticut

FILED

2005 JAN 12 P 4: 47

U.S. DISTRICT COURT
HARTFORD, CONN

Duane Ziemba

Vs.

Margaret Clark, et al.

Civil Action No.
3:02 cv 1609 (AWT)(DFM)

January 3, 2005

### Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion For Summary Judgment

  The plaintiff hereby respectfully opposes the defendants' motion for summary judgment in its entirety. The plaintiff as pro se is to an extreme struggling to litigate this case. This is a very meritorious action, and therefore with great humbleness the plaintiff is requesting for this honorable Court to patiently review the material facts set forth herein. Plaintiff has been as concise as possible.

### I. Introduction And Facts:

  The facts and evidence of prior action:
Ziemba V. Armstrong, et al. No. 3:98 cv 2344 (JCH)(HBF)

are tremendously relevant herein this subsequent case (prior action and subsequent case hereafter). See Exhibit 1, the Amended Complaint of the prior action, and see Defs' Mem., Attachment C, the Security Division Report pertinent to the prior action. These facts involve that prior to this case at Northern Correctional Institution (Northern hereafter) — in August of 1998 the plaintiff was maced and beaten by guards, four pointed to a bed frame for more than 22 consecutive hours (this subsequent case involves a horribly, grotesquely, and most painfully more than 20 hour four point restraint), deliberately denied medical care for his injuries, deliberately denied mental health care, and deliberately denied psychotropic medication that had been ordered by his treating psychiatrist.

In the prior August 1998 action, exactly as in this case -- Unconstitutionally the plaintiff was maced, excessive force was used against him, painfully he was tightly chained down by his hands and feet to a bed frame spread eagle, deliberately he was denied a mattress, deliberately he

was denied clothing, deliberately he was denied liquids, and deliberately he was denied use of the toilet. In both the prior and subsequent cases the defendants and others were gloating at the searing, horrible, abuses of the plaintiff.

At Northern - in the prior August 1998 action, following the beating and restraint of the plaintiff, the Department of Correction's own Security Division found that the Senior Supervisory official in charge, Captain Mangiafico (good friends of defendant Clark in this case) intentionally used excessive force against the plaintiff by striking him in the face. The DOC Security Division investigator, in addition to finding that Captain Mangiafico inflicted excessive force on the plaintiff, also found that three of the other guards on the scene "failed to truthfully report what took place", and that despite the plaintiff's complaints of injuries, the Northern medical staff "neglect[ed] to do a thorough assessment of plaintiff" and failed to document the results.

Incredibly, despite the Security Division's

findings concerning Captain Mangiafico striking the plaintiff in the face, and the "neglect" of the medical staff (nurse Clark who is a defendant in the prior action and this subsequent case), despite the totally unjustified length of the restraint, and despite the failure of the remaining staff members to tell the truth about the excessive force and the plaintiff's injuries, no one was disciplined for violating the Department's truthfulness directives, and no one was disciplined for denying the plaintiff needed medical and mental health care, and no one was disciplined for using excessive force against the plaintiff.

Defendant Armstrong, admittedly the DOC official ultimately responsible for imposing discipline upon staff who engage in misconduct or violate the rules —— shockingly rejected all of his Security Division's findings. See Armstrong Depo., Exhibit 2, at 15-16; 185-94; 234-37.

Only Captain Mangiafico received discipline of any kind; he was found guilty of "failure to Supervise" and was suspended for five days. Described as defendant Armstrong as "the least/lowest level of discipline". See Defs' Mem., Attachment C, The Routing Form.

Defendant Armstrong was responsible for this utter lack of discipline. Defendant Armstrong is properly named as a defendant in both the prior and this subsequent lawsuit. He has blatantly condoned these abhorrent acts. Defendant Armstrong's Constitutionally unacceptable responses to all of the prior Unconstitutional conduct was: He blatantly rejected all of his Security Division's findings, Armstrong Depo., Exhibit 2, at 15-16; 185-94; 234-37. He knowingly, with disgusting deliberate indifference to the plaintiff's life, safety and well being left the plaintiff in the extremely hostile and dangerous environment at Northern, See Amended Complaint at 13., He failed to take any meaningful discipline against any of his Subordinates guilty, He failed to provide any meaningful training to remedy the wrong, He failed to hold anyone accountable for the excessive force and physical torture of the plaintiff, and he failed to hold anyone accountable for the medical indifference and neglect.

As a result, at Northern, the plaintiff suffered the additional injuries in this subsequent case. These disgusting events occurred on his watch. These horrible,

already Substantiated, abuses took place directly under his authority. The unique and overwhelming material facts in this case clearly demonstrate that defendants Armstrong, Myers and Clark are not -- as a matter of law entitled to Summary judgment.

## II. Facts Of Present Case

 Id. The plaintiff relies on the facts and documentary evidence Set forth in his accompanying affidavit in Support, the exhibits, and the videotape Submitted by the defendants -- to Substantiate that: at Northern C.I. the defendants and their agents whom they were Officially responsible for, committed Serious acts of Unconstitutional retaliation against the plaintiff.

 Pamela Ziemba, the plaintiff's mother Sent defendant Armstrong a letter dated September 1, 1998. Which addresses the very Serious acts of retaliation being inflicted against plaintiff by his agents. Toward end of this letter She Stated: "My Son is (plaintiff) being destroyed, please Step in, please, you are

only one to stop this travesty." Defendant Armstrong, the Supervisory Official, failed to act on this letter and failed to take action to stop his agents serious retaliation against the plaintiff. Inter alia, he failed to "step in" and remedy the wrong, he was grossly negligent in supervising his subordinates who committed the wrongful acts, and he exhibited deliberate indifference to the rights of the plaintiff by failing to act on the information indicating that Unconstitutional acts were occurring. See Pl's Am. Compl. at 11 -- Exhibit 5 -- and Pl's Aff. in Supp. at 6.

Plaintiff personally sent defendant Armstrong letters dated: September 1, 3, 8, 14, 24, 25, October 6, 16, November 13, 14, 17 and December 16, 1998.          January 21, February 8, 16, June 1, 3, 25, August 10, 22, 27 and September 1, 8, 14 and 15, 1999. These letters very specifically informed defendant Armstrong of the serious acts of Unconstitutional retaliation being inflicted against the plaintiff, directly by his agents. Defendant Armstrong completely failed to take action, as the Commissioner, to stop the Unconstitutional acts of retaliation. See Pl's Am. Compl. at 12 - Exhibit 6 - And Pl's Aff. in Supp.

only one to stop this travesty." Defendant Armstrong, the Supervisory Official, failed to act on this letter and failed to take action to stop his agents serious retaliation against the plaintiff. Inter alia, he failed to "step in" and remedy the wrong, he was grossly negligent in supervising his subordinates who committed the wrongful acts, and he exhibited deliberate indifference to the rights of the plaintiff by failing to act on the information indicating that unconstitutional acts were occurring. See Pl.'s Am. Compl. at 11 -- Exhibit 5 -- and Pl.'s Aff. in Supp. at 6.

Plaintiff personally sent defendant Armstrong letters dated: September 1, 3, 8, 14, 24, 25, October 6, 16, November 13, 14, 17 and December 16, 1998.    January 21, February 8, 16, June 1, 3, 25, August 10, 22, 27 and September 1, 8, 14 and 15, 1999. These letters very specifically informed defendant Armstrong of the serious acts of unconstitutional retaliation being inflicted against the plaintiff, directly by his agents. Defendant Armstrong completely failed to take action, as the Commissioner, to stop the unconstitutional acts of retaliation. See Pl.'s Am. Compl. at 12 - Exhibit 6 - And Pl.'s Aff. in Supp.

-7-

...ant Armstrong's own Security Division
ion (relevant to prior action Ziemba V.
, No. 3:98 cv 2344 JCH)(HBF) — Exhibit 1)
, clearly addresses how in fact his
it Northern) were inflicting serious acts
ition against the plaintiff. That
e force was used, that three
failed to truthfully report what took
nd that the Medical Department
urse Defendant Clark in this
nt case) at Northern C.I. was
e to the plaintiff's medical needs.
nt Armstrong failed to act on these
nd he knowingly left the plaintiff in
emely hostile environment at Northern
le promoted for his agents to
and for it to escalate against the
   See Pl's Am. Compl. at 13 — — Defs'
achment C. — Prior Action Exhibit
d Pl's Aff. in Supp. at 2, 3, 4, 5, 6, 7, 8, 9


aliation, Unconstitutional violations were
against the plaintiff due to plaintiff
g his Constitutionally protected First
nt rights. By filing lawsuits,
s and grievances. Lawsuits: Ziemba V.

Wezner, 3:98 cv 2370 (DFM) and Ziemba V. Armstrong, 3:98 cv 2344 (JCH)(HBF). In this prior action both defendants Armstrong and Clark are also defendants. See Pl.'s Am. Compl. at 14 -- And Exhibits 1 and 26.

Verbally and through numerous letters, disciplinary appeals, complaints and grievances the Warden of Northern C.I. - defendant Myers was specifically informed and made aware of the serious unconstitutional retaliation by his agents against the plaintiff. Defendant Myers, as the supervisory official, just like defendant Armstrong, he completely failed to take action to stop the acts of serious retaliation and violations. And he was grossly negligent in supervising his subordinates who committed the wrongful acts. And he exhibited deliberate indifference to the rights of the plaintiff by failing to act on the information indicating that unconstitutional acts were occurring. See Pl.'s Am. Comp. at 15 -- And Exhibits 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22 and 23 -- And Pl.'s Aff. in Supp. at 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22 and 23.

Additionally, the plaintiff's family members repeatedly called defendant Armstrong and Myers reporting the violations. Each and every call they failed to return, act on, and they each exhibited deliberate indifference to the rights of the plaintiff. See Pl.'s Am. Compl. at 16.

Defendant Clark, due to the plaintiff suing her in lawsuit No. 3:98 cv 2344 (JCH)(HBA — Exhibit 1. She was extremely hostile towards the plaintiff. She held a serious vendetta against him. And she personally carried out very devious acts of retaliation. In addition she aggressively promoted her fellow staff to also inflict retaliation against the plaintiff. See Pl.'s Am. Compl. at 17.

Defendant Clark, on October 6, 1999 she viciously told the plaintiff that she is having him chained down because he is suing her. Pl.'s Am. Compl. at 18 — — Exhibit 20 — — And Pl.'s Aff. in supp. at 25 and 26.

Maliciously and sadistically in sole vicious retaliation defendant Clark falsified documents (See Exhibit 24) alleging plaintiff was kicking the cell wall with his post surgery (R)

foot. Therefore directly due to this retaliatory lie (and specifically defendants Armstrong and Myers' failure to stop the retaliation against plaintiff) completely unnecessary custody staff maced plaintiff, who was 100% peaceful (see the video), then used excessive force on him and in fact chained him down to bed frame. See Pl.'s Am. Compl. at 19 -- Exhibits 20 and 24 -- and Pl.'s Aff. in Supp. at 26, 28, 29 and 30.

Plaintiff _did not_ violate any form of prison rules, he _did not_ assault or attempt to assault anyone and he _emphatically_ _did not_ in anyway whatsoever threaten to or harm himself. It is a blatant lie by defendant Clark that plaintiff was kicking the cell wall. See Pl.'s Aff. in Supp. at 28 -- and Exhibit 20. Emphasis added: it is in fact this retaliatory lie that was used as the excuse to mace plaintiff, use force on him and to severely physically torture him in the four point restraints for 20½ hours.

The defendants for punitive purposes only, they four pointed plaintiff to a bed frame, for an unreasonable period of time. To knowingly, intentionally torture him in

—11—

retaliation due to his litigation against the
D.O.C. Pl's Am. Compl. at 24.

Plaintiff just had major foot surgery. Whole
side of his right foot has stitches. Being four
pointed with such serious medical condition
inflicted punishment of torture. Pl.'s Am. Compl.
at 25.

Plaintiff was for punitive purposes only denied
a mattress, clothing, food, liquids, use of
bathroom, four pointed in cell full of mace,
and backed up toilet full of raw human wast.
Plaintiff's Am. Compl. at 26 and 27 -- Exhibit
20, 21, 22 and 23 -- Pl.'s Aff. in supp. at 30.

See Video -- plaintiff was calmly sitting in the
cell when for no form of justified reason he
was sprayed two (2) times with mace. Then
excessive force was used against him. Video
shows him screaming real bad in pain
"your breaking my arm", and "why'd you hit
me in my face?" And "you made my
mouth bleed." Then in sole retaliation
they four pointed him to the hard cell bed
frame. Beforehand they failed to
adequately decontaminate his body from the

-12-

mace. Video Shows that they only put his face under the Shower water. Resulting in his whole body painfully burning during the long restraint, and causing his skin to become raw in areas all over his body. Pl's Aff. at 30. Deliberately they four pointed him and left him locked in cell full of mace. Video Shows him Stating how "you can see the mace haze in the cell." Deliberately he was denied a mattress, deliberately he was denied adequate clothing in the very cold cell — was provided only a paper gown/sheet, deliberately he was denied food was fed only once, deliberately he was denied liquids, deliberately he was denied use of the toilet thereby forced to urinate on himself then left soaked in urine, deliberately he was restrained in cell with broken backed up toilet full of human wast. And incredibly, despite the fact that he was calm -- See Exhibits 21, 22-23 -- they still left him painfully four pointed by his hands and feet for 20 hours and 30 minutes. See Exhibit 25. They very intentionally in retaliation physically tortured him.

-13-

# III. Standard For Summary Judgment

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. The burden of showing that no genuine factual disputes exist rests upon the moving party.... In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom the summary judgment is sought. Rodriguez V. State Of Connecticut, 169 F. Supp. 2d 39, 43 (D. Conn. 2001) (JCH) (Citations omitted).

The Supreme Court has recently articulated that the pleading standard under Rule 8 of the Fed. R. Civ. P. is a liberal one, and that a complaint must include only a "short and plain statement of the claim", and must simply "give the defendants fair notice of what the plaintiff's claim is and the grounds upon it rests." Swierkiewicz V. Soreman, N.A., 534 U.S. 506 (2002).

The Second Circuit "ordinarily require[s]

the district Court to give substantial leeway to pro se litigants". Gomez V. Avco Corp., 964 F. 2d 1330, 1335 (2d Cir. 1992). "The Court must construe pro se pleadings broadly", and interpret them "to raise the strongest arguments they suggest." Parsons V. Pond, F. Supp. 2d 205, 207 (D. Conn. 2000) (JCH) (quoting Cruz V. Gomez, 202 F. 3d 593, 597 (2nd Cir. 2000). See also Sundwall V. Leuba, 2001 U.S. Dist. LEXIS 737 * (D. Conn. January 23, 2001) (JCH) (Same); Clark V. Tosco Corp., 2000 U.S. Dist. LEXIS 19368 * 3 (D. Conn. October 17, 1998) (JCH) ("The Court is bound to construe pro se complaints liberally.").

IV. Legal Argument

A. Each Defendant Was Personally Involved In Constitutional Violations

The defendants argue that the plaintiff's claims against the defendants must be dismissed due to lack of personal involvement in the alleged constitutional violations. Defs' Mem., at page 4. The defendants are incorrect as a matter of law for numerous reasons.

_Id._ Defendants Armstrong and Myers as the Supervisory Officials were each personally involved in the Constitutional violations, because they both knowingly left the plaintiff in Northern —— an extremely hostile and dangerous environment. Inter alia, they failed utterly to take action to stop the Severe retaliation against the plaintiff by their Subordinates.

Please See Exhibit 4, Civil Action: Ziemba V. Armstrong, et al. No. 3:01 cv 2166 (JCH) (HBF) — this is a prior hereto "Northern" action —— the Court's Ruling On Motion To Dismiss (Doc #27) dated June 10, 2003 (JCH) —— Court ruled:

"The plaintiff alleges that, prior to the March 1999 incidents, he made Commissioner Armstrong and Warden Myers aware of other retaliatory acts by Officials at Northern through letters, grievances and complaints.[2]

"The plaintiff claims that Commissioner Armstrong and Warden Myers _failed to take action to remove him from the hostile and dangerous environment at Northern and, as a result, he suffered additional injuries._" These

allegations meet the requirement for alleging
<u>Supervisory liability</u>.    (In this here
subsequent case plaintiff now submits
evidence proving that Armstrong and Myers
face these supervisory liability claims).

<u>The above prior Court Ruling is</u>
<u>particularly relevant to the facts</u>
<u>in this subsequent case. Because</u>
<u>it is defendants Armstrong and</u>
<u>Myers' ultimate continued failure to</u>
<u>take action to remove the plaintiff</u>
<u>from Northern -- the known extremely</u>
<u>hostile and dangerous environment,</u>
<u>which resulted in the -- even</u>
<u>further injuries herein this case.</u>

B. <u>Armstrong</u>

    Defendant Armstrong, he admits that he
was responsible "for the supervision and
training, discipline and control of all persons
working for the Department of Correction."
Armstrong Depo., Exhibit 2 at 38.
He also admits that he was responsible "for
administration of all facilities, program and
operation of the agencies." Armstrong Depo.

Exhibit 2 at 11-12. He further admits that he was responsible for administering, coordinating and controlling the operation of the Department, that he: "Would do that through the issuance of administrative directives and delegation of his authority through those directives." (emphasis added). Armstrong Depo., Exhibit 2 at 12.

The liability of a Supervisor under §1983 can be shown in one or more of the following ways: (1) actual direct participation in the Constitutional violation, (2) failure to remedy the wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a Constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that Unconstitutional acts were occurring. Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

The evidence in this case undoubtedly substantiates that defendants Armstrong and Myers face civil liabilities, for 1 through 5 Section 1983 violations.

The prior civil action: Ziemba V. Armstrong, No. 3:98 cv 2344 (JCH) (HBA) — Exhibit 1. And See Defs' Mem, Attachment C., DOC Security Division Report. Id. It was in fact substantiated that "Northern" captain Mangiafico used excessive force against plaintiff, that at "Northern" the plaintiff was denied medical care, that at "Northern" the plaintiff was physically tortured for more than 22 consecutive hours in four point restraints, that three "Northern" guards "failed to truthfully report what took place". And that the "Northern" medical staff (namely defendant Nurse Clark) "neglect[ed] to do a thorough assessment of inmate Ziemba and failed to document the results". Defendant Armstrong's Constitutionally unacceptable response to these violations was: (1) he blatantly rejected all of his Security Division's findings — See Armstrong Depo., Exhibit d at 15-16 ; 185-94 ; 234-37 ; (2) he knowingly with disgusting deliberate

-19-

indifference to plaintiff's life, safety and well being did not remove him from "Northern" the confirmed hostile and dangerous environment; (3) he failed to take any meaningful discipline against his guilty subordinates; (4) he failed to provide any training to remedy wrong(s); and (5) he failed to hold anyone accountable for the excessive force, physical torture, and medical indifference of plaintiff.

In addition to these indicated violations, defendant Armstrong had even further actual and constructive notice of the Unconstitutional retaliation (violations) through overwhelming documentary evidence – _Id._ Please see Exhibits and Pl's Aff. in support at 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 24.

These are abundant genuine issues of material fact which prove defendant Armstrong's personal involvement. Supervisory liability may be imposed when an official has actual or constructive notice of Unconstitutional practices and demonstrates "gross negligence" or "deliberate indifference" by

-20-