failing to act. <u>McCann V. Coughlin</u>, 698 F. 2d 112, 125 (2d Cir. 1983); (Supervisor may be found "grossly negligent" or "deliberately indifferent" if he "Knew or Should have Known" of the underlying facts); <u>Rodriguez V. State of Connecticut</u>, 169 F. Supp. 2d 39, 44-45 (D. Conn. 2001) (JCH): Ruling On Defendants' Motion for judgment on the pleadings [DKT. No. 193] (May 8, 2003, Judge Hall) at 14-15.

On this record already evidenced herein this case, the plaintiff would be entitled to Summary judgment in his favor.

To See one more even further example of defendant Armstrong's personal involvement, he admits that he was responsible for administering, coordinating and controlling the operations of the Department, that he: "would do that through the issuance of administrative directives and delegation of his authority through those directives." Armstrong Depo., Exhibit 2 at 12.

It <u>is</u> defendant Armstrong's created policy

and custom of Administrative Directive 6.5
Use Of Force, under which the
Unconstitutional practices occurred of the
plaintiff being horribly, grotesquely and most
painfully tortured for more than 20
consecutive hours in the Full Stationary
Restraints.

   Administrative Directive 6.5 Use Of Force —
Exhibit 27 — effective date August 3, 1998 —
Signed by defendant Armstrong on June 25, 1998
— is the Directive (policy and custom) that was in
effect during the incidents pertinent hereto.
Specifically this Directive was Unconstitutionally
deficient due to the following facts:
(1) It did not provide; This procedure (four point
restraints) Shall be implemented in collaboration
with Medical Staff. The inmate Shall be
placed on a mattress that is positioned On top
of a bed frame and the inmate Shall be
positioned face up. Arms and legs Shall be
restrained Such that discomfort to the
inmate is minimized. (6.5 Directive — Revised
2003 at 8.(4) does provide this, See Exhibit 28);
(2) It did not provide; A post incident medical
evaluation Shall be conducted upon placement

#22

and at the indicated intervals :(a) Circulation
- every 15 minutes; (b) respiration - every 15
minutes; (c) pulse - every 30 minutes; (d) blood
pressure - every 60 minutes; and (e) temperature
- every 120 minutes. (6.5 Directive - Revised 2003 at
8.(H) does provide this, See Exhibit 28);
(3) It did not provide; These checks shall be
executed and documented by Health Services
Staff in the inmate health record. At least every
two (2) hours the restraints must be totally
removed or serially removed and each limb of the
inmate moved to full range of motion and
assessed for trauma, blood circulation, and/or
diminished nerve sensation. (6.5 Directive -
Revised 2003 at 8.(H) does provide this, Exhibit 28);
(4) It did not provide; The inmate shall be offered
and allowed to attend bodily functions at a
minimum, every two hours. Restrained inmates
shall receive normally scheduled meals. Meals
shall be bite-sized and served
on paper plates, unless a physican has
ordered alternate dietary arrangements.
Immediate removal of restraints shall be
initiated where a decompensating physical
condition of a restrained inmate

#23

contraindicates restraints. (6.5 Directive-
Revised 2003 does provide this, See Exhibit 28).

  In 2003, defendant Armstrong corrected thus
Unconstitutionally deficient policy and custom,
6.5 Directive. He revised it accordingly,
Which is an admission of guilt to how,
in fact, the original version was deficient.
Please compare the original 6.5 Directive -
Exhibit 27, with the revised 2003 version -
Exhibit 28.

  It's thus Unconstitutional deficient 6.5
Original Directive -- that directly caused
the plaintiff to be horribly, grotesquely and
painfully physically tortured in the four
point restraints. For the excessive and
totally unjustified more than 20 consecutive
hours. And to, in fact, be: painfully chained
down by his limbs spread eagle, denied a
mattress, denied food, denied liquids, and
denied use of toilet facilities. Clearly
defendant Armstrong created this policy and
custom under which these Unconstitutional
practices occurred. See Williams V.
Smith, 781 F.2d 319, 323-24 (2d Cir. 1986);
Colon V. Coughlin, 58 F.2d 865, 873 (2d Cir. 1995);

and <u>Hernandez V. Keane</u>, 341 F.3d 137, 144 (2d Cir. 2003). <u>Id.</u>

C. <u>Myers</u>

With respect to defendant Myers. The material facts of his personal involvement are equally evincing -- overwhelmingly. Defendant Myers had very clear actual and constructive notice of the Unconstitutional retaliation against the plaintiff. See Pl.'s Aff. in Support at 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23 and 24. And See the Exhibits of evidence that Pl.'s Aff. in Support makes reference to. The liability of defendant Myers, as a Supervisory Official is clearly proven. <u>Id.</u> See cases Cited.

Additionally, 6.5 Directive at 8.(C) — Exhibit 27. Mandates: "Placement of an inmate in full Stationary restraints on a restrictive Status Shall be authorized by the Shift Supervisor with Notification of the Unit administrator (defendant Warden Myers) within <u>one</u> (1) hour of placement." And: "The facility administrator (also in fact defendant Warden Myers) Shall review the inmate's Status

every eight (8) hours". On October 6 and 7, 1999, when plaintiff was being physically tortured in the "full stationary restraints", defendant Myers was informed and fully aware. Furthermore, plaintiff filed four (4) Administrative Grievances directly relevant to these incidents. And it is defendant Myers who was the level one reviewer of all four grievances. Incredibly Myers four times failed to remedy the wrongs. See these facts at Exhibit 20, 21, 22 and 23.

To see one more even further example of defendant Myers' personal involvement, see Gomez Depo., Exhibit 3 at 20-21. "[A] warden can end a restraint at any time."

D. Clark

It is well establised that prisoners enjoy a Constitutional right to access to the Courts. Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed. 2d 72 (1977). It is equally well establised that prison officials may not retaliate against a prisoner for exercising this right. Franco v. Kelly, 854 F. 2d 584 (2d Cir. 1988), the Second Circuit addressed the

question "Whether an allegation that State prison officials intentionally filed false disciplinary charges against an inmate, in retaliation for the prisoner's exercise of a Constitutional right, States a cause of action for damages under [Section 1983] that can withstand a motion for Summary judgment." The Court answered this question in the affirmative.

In this case the Substantiated conduct is much more egregious. We are not talking about a mere false retaliatory disciplinary charge. In this case defendant Clark in retaliation due to plaintiff Suing her in prior action case Ziemba V. Armstrong, No. 3:98 cV 2344 (JCH)(HBF) — She viciously told the plaintiff "that She is having him chained down because he is suing her." Id. Then in Sole retaliation Clark went and falsified documents alleging plaintiff was "kicking ® post Surgery foot". Thereafter due directly to this retaliatory lie, plaintiff was maced, excessive force was used against him and he was "chained

down" -- Severely tortured in four point restraints for 20 hours and 30 minutes.

See Exhibit 24, Medical records from 10/6/99 falsified by Clark. She stated: "I/M (plaintiff) hostile upon admission and began kicking ℞ post surgery foot on wall; I/M then took a running start from one wall and ran to other wall to kick his ℞ foot; he than began to kick the back of the ℞ foot also; new order for 4 point restraints for safety concers to prevent self harm". (Clearly due to these lies plaintiff was maced, force used, and him 4 pointed).

The material facts prove Clark lied by claiming above. See also Exhibit 24, on 10/7/99 Dr. Morgan Vigneron, MD stated: "I/M denies kicking ℞ foot. Wound appears undisturbed + healing". (Material facts.).
Emphasis Added: plaintiff's side of ℞ foot had stitchs down whole side, clearly if he was kicking this ℞ foot as Clark claimed -- wound would not of been "undisturbed + healing".
Also it's alleged that plaintiff was 4 pointed "for safety concers to prevent self harm".

We Know that this also false, due to you <u>do not ever</u> four point someone for their own Safety — <u>then Severely physically torture them in the restraints.</u>

<u>Thaddeus x V. Batter</u>, 110 F. 3d 1233 (6th Cir, 1997) Retaliation against an inmate for exercising his or her Constitutional right is itself a violation of Constitution.
<u>Gill V. Mooney</u>, 824 F. 2d 192, 194 (2d Cir. 1987);
<u>Candelaria V. Coughlin</u>, 787 F. Supp. 368, 377 (S.D.N.Y. 1992), aff'd 979 F. 2d 845 (2d Cir. 1992) A claim for relief may be Stated under Section 1983 if administrative decisions are made in retaliation for the exercise of [*13] an inmate's Constitutionally protected rights.    (The plaintiff in retaliation due to his Constitutionally protected litigation was maced, excessive force used against him, and he was Severely tortured in four point restraints).

<u>Colon V. Coughlin</u>, 58 F. 3d 865, 872 (2d Cir. 1995);
<u>Percell V. Coughlin</u>, 790 F. 2d 263, 265 (2d Cir. 1986);
<u>Morello V. James</u>, 810 F. 2d 344, 480 (2d Cir. 1987);
<u>Steinberg V. Taylor</u>, 500 F. Supp. 477, 480 (D. Conn. 1980). Prisoners have the right not to be

retaliated against for exercising his right of access to the Courts.

An action motivated by retaliation for the exercise of a Constitutional right is actionable. <u>Franco V. Kelly</u>, 854 F. 2d 584 (2d Cir. 1988); <u>Healthy City School Board District Bd. of Education V. Doyle</u>, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed. 2d 471 (1977); <u>Jackson V. Cain</u>, 864 F. 2d 1235 (5th Cir. 1989); <u>Smith V. Maschner</u>, 899 F. 2d 940 (10th Cir. 1990).

## E. <u>The Force Used Constitutes Excessive Use Of Force And Unconstitutional Retaliation</u>

The force was maliciously and sadistically used to harm the plaintiff, due to his litigation against the defendants and Department of Correction. Absolutely no force was necessary. The chronological material facts in Plaintiff's Affidavit In Support and the Exhibits of evidence prove, that the Northern prison officials were inflicting severe acts of retaliation against plaintiff. The Supervisory Officials - -defendants Armstrong and Myers are properly named as defendants, for their <u>repeated</u> <u>failure</u> to

take action to remove plaintiff from the extremely hostile and dangerous environment, as a result plaintiff suffered the additional injuries —— by defendant Clark's retaliation against plaintiff, and the other Northern Officials retaliation whom Armstrong and Myers are responsible for. Id.

See video. Plaintiff was calmly and peacefully sitting in cell. When for no justified reason he was maced two (2) times — excessively. To be sure, excessive use of tear gas by prison officials can amount to an Eighth Amendment violation. See. e.g., Soto V. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984). Indeed, Courts have held macing in the face alone sufficiently severe to state a Constitutional claim. See Stringer V. Rowe, 616 F.2d 993, 998-1000 (7th Cir. 1980) (per Curiam); cf. Smith V. Iron County, 692 F.2d 685, 686 (10th Cir. 1982) (Use of mace "Constitutes excessive force under most circumstances").

It makes little sense to say that use of tear gas can not be a violation of the eighth amendment. In Estelle V. Gamble, 429 U.S. 97 S.Ct. 285, 50 LEad 251 (1976), the

-31-

Court stated the eight amendment prohibits those punishments which "are incompatible with the evolving standards of decency that mark the progress of a maturing society." (Quoting <u>Trop V. Dulles</u>, 356 U.S. 86, 101, 78 S. Ct. 590, 2 L.Ed. 2d 630 (1958)), or which "involve the unnecessary and wanton infliction of pain,' " 429 U.S. at 103, 97 S. Ct. at 290 (Quoting <u>Gregg V. Georgia</u>, 428 U.S. 153, 173, 96 S. Ct. 2909, 49 L.Ed. 2d 859 (1976)).

Courts have condemned unnecessary use of tear gas/chemical agents as violation of Eighth Amendment. <u>Battle V. Anderson</u>, 376 F. Supp. 402 (E.D. Okl. 1974); aff'd 564 F.2d 388 (10th Cir. 1977); <u>Landman V. Royster</u>, 333 F. Supp. 621, 649 (E.D. Va. 1971); <u>Morales V. Turman</u>, 364 F. Supp. at 173-74. <u>In Battle</u>, the Court said: "The use of chemical agent on the rationale that the actual situation is one which could develop into — although it has not yet becomes one in which the use of such agent is permitted, constitutes the excessive use of physical force and is prohibited." Moreover: Video in this case clearly shows that the plaintiff was only calmly and peacefully sitting in cell. He <u>did not</u> in anyway

-32-

whatsoever harm anyone, nor himself, nor any property. It was totally unnecessary to use the physical force against plaintiff — — by macing him two (2) times. Constituting excessive force and retaliation. Further the video shows he was not adequately decontaminated from the mace, and then he was locked in a cell full of mace, four pointed. Id.

The Court of Appeals for this Circuit, recognizing that prisoners "are at the mercy of their Keepers", has found that use of force by staff against inmates that is "wholly beyond any force needed to maintain order" violates the Eighth Amendment. Inmates of Attica Correctional Facility V. Rockefeller, 453 F. 2d 12, 23, 22 (2d Cir. 1971); See also Hoptowit V. Ray, 682 F. 2d 1237, 1251 (9th Cir. 1982).

In this case after plaintiff was maced, video shows him sitting calmly on bed frame held by a least four guards, when guards violently twisted plaintiff's arm. Can hear plaintiff screaming real bad in pain "your breaking my arm", and "why'd you hit me in my mouth?", and "you made my mouth bleed." All Unnecessary — excessive force.

-33-

The Supreme Court's decision in Hope v. Pelzer, 536 U.S. 730 (2002) (citations and internal quotes omitted) is particularly relevant to the four point excessive force claim here:

> As the facts are alleged by Hope, the Eighth Amendment violation is obvious. Any safety concerns had long since abated by the time petitioner was handcuffed to the hitching post because Hope had already been subdued, handcuffed, placed in leg irons, and transported back to prison.... Despite the clear lack of an emergency situation, the respondents knowingly subjected him to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the restricted position of confinement for a 7-hour period, ... to prolonged thirst ..., and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation. The use of the hitching post under these circumstances violated the basic

concept underlying the Eighth Amendment [which] is nothing less than the dignity of man. Id at 738.

The plaintiff in this case was horribly, grotesquely, and most painfully physically tortured in the four point restraints, for more than 20 consecutive hours. Painfully his limbs were spread eagle, and tightly chained down. (See video). Deliberately he was denied a mattress, video shows he was four pointed on hard bed frame -- proving it was a retaliatory, and punitive restraint. <u>Defendant Commissioner Armstrong himself swore under oath that an inmate in four point restraints should be provided with a mattress. See Armstrong Depo., Exhibit 2 at 95.</u>
Deliberately plaintiff was denied clothing in very cold cell, deliberately he was denied food, deliberately he was denied liquids, deliberately he was denied use of the bathroom thereby forced to urinate on himself and then left soaked in urine, deliberately he was four pointed in cell with broken backed up toilet full of raw

human wast, and deliberately he was left in this Subhuman and Subanimal condition for an excessive 20 hours and 30 minutes. Despite the fact that he was calm, peaceful and kind to staff. See Exhibits 21, 22 and 23. Deference to prison officials does not give them Constitutional license to torture inmates. Wilkerson V. Utah, 99 U.S. 130, 136, 25 LEd. 345 (1878).

The image of individuals shackled naked for days to metal bed frame is a sad reminder of the "Soul chilling inhumanity of Conditions in America's prisons." Rhodes V. Chapman, 452 U.S. 337, 354, 69 LEd. 2d 59, 101 S.Ct. 2392 (1981). The Court was clearly within its right to enjoin such "outmoded and inhuman practies." Landman V. Royster, 333 F. Supp. 621, 648 (E.D.Va. 1971); Ferola V. Moran, 622 F. Supp. 814, 822 (D.R.I. 1985) ("Sheer Common Sence tells us that immobility in such a position for a protracted period of time will cause great physical Suffering and the likelihood of injury .... It plainly works great and gratuitous Suffering on an individual to deny him, for [at least

14 consecutive hours], the opportunity to "
use the toilet.\.

→ Defendant Armstrong when asked is it ever
appropriate to use restraints as punishment
for an inmates behavior — — under oath
Stated: "Never, and it would probably be illegal
as well." See Armstrong Depo., Exhibit 2 at 154.
And See Armstrong Depo., Exhibit 2 at 156( A
22-hour restraint "may be too long if the
person wasn't displaying any reason or there
was no reasonable belief that the person
needed to stay.").
Armstrong states this with respect to the
prior actions 22 hour restraint. What about
this subsequent case? The Substantiated
conduct in this case is much more egregious.
There was absolutely no justification to
place plaintiff into the restraints,
(sole retaliation) and absolutely no reason
whatsoever to keep him in the restraints
for 20 hours and 30 minutes. Constituting
excessive force — — an Eighth Amendment
violation.

F. <u>It IS Beyond Cavil That Defendants Armstrong, Myers and Clark Are Not Entitled To Qualified Immunity</u>

The qualified immunity analysis in well-established: First, the Court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right; Second, if a violation can be made out, the court must ask whether the right was clearly established. See <u>Saucier V. Katz</u>, 533 U.S. 194, 200-01 (2000); <u>Ehrlich V. Town of Glastonbury</u>, 348 F. 3d 48, 54-55 (2d Cir. 2003).

First, the defendants' conduct did violate the plaintiff's constitutional rights. It is well established that prisoners enjoy a constitutional right to access to the Courts. <u>Bounds V. Smith</u>, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed. 72 (1977). It is equally well established that prison officials may not retaliate against a prisoner for exercising this right. See <u>Campbell V. Beto</u>, 460 F. 2d 765, 768 (5th Cir. 1972); The law making retaliation for the exercise of a constitutional right

-38-

actionable under §1983 has been established for some time and an objectively reasonable official could not fail to know it. <u>Freeman v. Blair</u>, 862 F.2d 1330, 1332 (8th Cir. 1988) (Citing <u>Mount Healthy City Board of Education v. Doyle</u>, 429 U.S. 274, 83-84, 97 S.Ct. 568, 574 50 L.Ed. 2d. 471 (1977) ; <u>Buise v. Hudkins</u>, 582 F.2d 223, 229 (7th Cir. 1978), cert. denied, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed. 2d 466 (1979) ; <u>Percell v. Coughlin</u>, 790 F.2d 263, 265 (2d Cir. 1986) ; <u>Morello v. James</u>, 810 F.2d 344 (2d Cir. 1987) ; <u>Steinberg v. Taylor</u>, 500 F. Supp. 477, 480 (D.Conn. 1980) ; <u>Franco v. Kelly</u>, 854 F.2d 584 (2d Cir. 1988).

With respect to to the excessive force by macing claim, see foregoing cited cases. <u>Id.</u> With respect to the physical excessive force (and retaliatory), including the long four point restraint. See foregoing cited cases. <u>Id.</u> And: Convicted prisoners are protected from the misuse of force by the cruel and unusual punishment clause of the Eighth Amendment. <u>Hudson v. McMillion</u>, 503 U.S. 112 S.Ct. 995, 998-99 (1992) ; <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986).

Please See the prior Northern action: Ziemba V. Armstrong, et al. No. 3:98 cv 2344 (JCH)(HBF). Exhibit 1. The facts in this prior action Unquestionably <u>mirror</u> the facts herein this case. Recently, in the prior action the defendants (also Attorney Beizer), also moved for Summary judgment on the <u>very Same</u> grounds that they have herein this case. And this Court by 24 page Ruling dated November 8, 2004, <u>denied</u> the defendants' motion for Summary judgment. See Exhibit 29 - the Court's Ruling. Specifically the Court has <u>denied</u> the defendants' motion alleging lack of personal involvement of Armstrong (also defendant in this case), Gomez (Northern X-Warden just like defendant Myers in this case), Clark (also defendant in this case), McAllister and Oglesby.  Further, the Court in fact found that the plaintiff: "Ziemba States a claim for a Constitutional Violation". And further, the Court in fact found that: "The allegations describe Violations of clearly established rights and qualified immunity <u>does not</u> attach to any of the five defendants as a matter of law." (emphasis added).

-40-

Second, the plaintiff's Constitutional right to be free from retaliation and excessive force—— were all clearly established rights. <u>Id.</u> Please see foregoing cited cases.

"This Circuit has held that the doctrine of qualified immunity does not shield officials from § 1983 liability for engaging in retaliatory conduct in response to an inmates exercise of rights." <u>Lawrance V. Coughlin</u>, 862 F. Supp. 1090, 1098 (S.D.N.Y. 1994).

Wherefore, the plaintiff submits to the wisdom of this honorable Court that as a matter of law the defendants' motion should be forthwith denied.

Respectfully Submitted
Duane Ziemba
Duane Ziemba # 128963
Garner C.I.
50 Nunnawauk Road
Newtown, CT. 06470

## Certification

I hereby certify that a copy of the foregoing was mailed to the following on this 3rd day of January 2005:

Matthew B. Beizer
Assistant Attorney General
110 Sherman Street
Hartford, CT. 06105

By: Duane Ziemba
Duane Ziemba