UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


DUANE ZIEMBA                    :
                               :                PRISONER
        v.                     :       Case No. 3:02CV1609(AWT)
                               :
MARGARET CLARK, et al.[1]       :


RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        Plaintiff Duane Ziemba ("Ziemba"), an inmate confined in the custody of the Connecticut Department of Correction, commenced this civil rights action pursuant to 28 U.S.C. § 1915.  He alleges that the defendants harassed him and confined him in four-point restraints in retaliation for his litigation activities.

        Defendants Armstrong, Myers and Clark ("the defendants") have filed a motion for summary judgment.  For the reasons that follow, the defendants' motion for summary judgment is being granted.

I.    Standard of Review

        In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of

---

[1]The named defendants are Margaret Clark, John Armstrong, Larry Myers, William Faneuff and Michael Holland.  All defendants are named in their individual capacities only.  On December 4, 2003, the court granted the defendants' motion to dismiss all claims against defendants Faneuff and Holland as barred by the statute of limitations.

material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact."  Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  A party

may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible). A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is

3

insufficient to preclude summary judgment.  See Lujan v. National
Wildlife Fed'n, 497 U.S. 871, 888 (1990).

II.  Facts[2]

At all times relevant to this case, Ziemba was confined at
Northern Correctional Institution in Somers, Connecticut.

Prior to October 6, 1999, Ziemba wrote many letters to
various correctional officials, including defendants Armstrong
and Myers, complaining that he was being harassed by various
correctional officers.

In late September 1999, Ziemba underwent surgery on his
right foot.  On October 6, 1999, Ziemba destroyed his mattress
and clogged his toilet, causing his cell and the tier to become
flooded.  When Correctional Lieutenant Casey responded to the
cell, Ziemba claimed that correctional staff had removed one box
of his legal materials from his cell.  Ziemba was taken to the
medical unit and confined in a cell there instead of being
confined in four-point restraints in a traditional cell because
of his foot injury.

That afternoon, Correctional Officer Strozier reported to
his supervisors that he witnessed Ziemba punch his cell door and

---

[2]The facts are taken from the defendants' Local Rule 56(a)1
Statement, Ziemba's Local Rule 56(a)2 Statement and the various
exhibits filed by both parties, including a videotape of the
October 6, 1999 incident.

continuously kick his cell door with his injured foot.  Ziemba disputes the accuracy of the report.  Correctional Lieutenant Casey decided to place Ziemba in four-point restraints.  Ziemba refused to move to the cell door to be handcuffed.  Defendant Holland and a cell extraction team were summoned.  When Ziemba again refused to go to the cell door, a chemical agent was sprayed into the cell.  Ziemba then permitted himself to be handcuffed.  After decontamination, Ziemba was confined in four-point restraints in another cell in the medical unit.

## III. <u>Discussion</u>

Ziemba contends that defendant Clark orchestrated his placement in four-point restraints on October 6, 1999, in retaliation for his naming her as a defendant in another case. He also argues that defendants Armstrong and Myers failed to take corrective action regarding this incident and his many other letters complaining about retaliatory treatment.

The defendants move for summary judgment on the grounds that Ziemba fails to demonstrate the personal involvement of the remaining defendants, that Ziemba cannot demonstrate that excessive force was used against him and that the defendants are entitled to qualified immunity.

A.    <u>Excluded Conduct</u>

Ziemba commenced this action by a complaint dated July 1, 2002.  He includes in his amended complaint various allegations of retaliatory acts that took place more than three years before he commenced this action.  As discussed below, Ziemba's claims of retaliation and supervisory liability regarding those incidents are included in other of his cases.  Thus, the court will not consider those claims again in this case.

<u>Ziemba v. Armstrong</u>, Docket No. 3:98cv2344 (JCH)(HBF), involves the alleged use of excessive force against Ziemba in August 1998 and the alleged placement of metal fragments in his food.  Ziemba has amended his complaint in that case to include claims of supervisory liability against defendant Armstrong for this incident and references the many letters and grievances he submitted concerning the incident and his allegations that defendant Armstrong failed to discipline the correctional officers involved, thereby encouraging similar action in the future.

<u>Ziemba v. Armstrong</u>, Docket No. 3:01cv2166 (JCH)(HBF), involves incidents occurring in March 1999, namely, the alleged use of excessive force against Ziemba on at least three occasions, failure to provide medical care for his injuries and confiscation of his legal materials.  Ziemba alleges that

defendants Armstrong and Myers failed to take any action to remove him from the hostile and dangerous environment at Northern and that as a result he suffered additional injuries. These same allegations are included in this complaint to support Ziemba's retaliation claims. These two cases still are pending.

A district court enjoys substantial discretion to manage its docket efficiently to avoid duplicate litigation. A plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2d Cir. 2000). Thus, a court may dismiss an action when a prior pending action has been filed as long as the "controlling issues in the dismissed action will be determined in the other lawsuit." 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1360, at 442 (2d ed. 1990). The purpose of this rule is "to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments. . . ." Colortyme Financial Servs., Inc. v. Kivalina Corp., 940 F. Supp. 269, 272 (D. Haw. 1996) (internal quotation marks and citations omitted).

The general rule is that the first suit to be filed should have priority "absent the showing of balance of convenience in favor of the second action." Adam v. Jacobs, 950 F.2d 89, 93-94 (2d Cir. 1991) (internal quotation marks and citation omitted).

7

When it is possible that, through amendment, each action may contain all of the issues and parties presently contained in either action, the continuation of the first action to be filed is favored.  See Hammett v. Warner Brothers Pictures, Inc., 176 F.2d 145, 150 (2d Cir. 1949); Gyadu v. Hartford Ins. Co., No. 3:96cv1755 (D. Conn. Apr. 21, 1997) (Squatrito, J.) (dismissing case under "prior pending action doctrine" where plaintiff could raise all causes of action by amended complaint in his first action), aff'd, 133 F.3d 907 (2d Cir. 1998).  In determining whether a claim is barred by the prior pending action doctrine, the court may rely on a comparison of the pleadings filed in the two actions.  See Connecticut Fund for the Environment v. Contract Plating Co., 631 F. Supp. 1291, 1293 (D. Conn. 1986).

Upon review of the operative complaints in the two other cases, the court concludes that Ziemba's claims of supervisory liability regarding incidents occurring prior to September 1999 are addressed in those cases.  Thus, the court does not consider those claims in this action.

B.   Defendant Clark

Ziemba alleges that defendant Clark was responsible for the use of four-point restraints on October 6, 1999.  He alleges that she falsified reports and told him that she was doing so because he named her as a defendant in Ziemba v. Armstrong, Docket No.

8

3:98cv2344 (JCH)(HBF).

Ziemba has provided no evidence that defendant Clark was involved in the decision to place him in four-point restraints. Court records in Ziemba v. Armstrong, Docket No. 3:98cv2344 (JCH) (HBF), show that the court did not receive Ziemba's amended complaint adding Clark as a defendant until July 24, 2000, and did not forward the amended complaint to the U.S. Marshal to have it served on her until October 2000. Thus, defendant Clark would not have known that she was being sued by Ziemba until one year after the incident giving rise to this claim. The court concludes that Ziemba has not presented any evidence in opposition to the motion for summary judgment to support a claim of retaliation by defendant Clark and cannot do so. Accordingly, the defendants' motion for summary judgment is granted as to all claims against defendant Clark.

C.    Defendants Armstrong and Myers

Ziemba's claim against defendants Armstrong and Myers is based on supervisory liability.

"A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002). Section 1983 imposes liability only on the official causing the violation. Thus, the doctrine of respondeat superior is inapplicable in

section 1983 cases.  See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999); Prince v. Edwards, No. 99 Civ. 8650(DC), 2000 WL 633382, at *6 (S.D.N.Y. May 17, 2000) ("Liability may not be premised on the respondeat superior or vicarious liability doctrines, . . . nor may a defendant be liable merely by his connection to the events through links in the chain of command.")(internal quotations and citation omitted).

    Ziemba may show supervisory liability by demonstrating that one or more of the following criteria has been satisfied: (1) the defendant actually and directly participated in the alleged acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or sanctioned a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in his supervision of the correctional officers who committed the constitutional violation; and (5) the defendant failed to act in response to information that unconstitutional acts were occurring.  See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).  In addition, Ziemba must demonstrate "an affirmative causal link between the supervisor's inaction and [his] injury."  Leonard, 282 F.3d at 140.

10

Ziemba alleges that he notified defendants Armstrong and Myers of the retaliatory treatment by correctional staff and that they failed to intervene.  The alleged constitutional violation in this case is retaliation for litigation activities.  To state a First Amendment claim for retaliation, Ziemba must plead "'non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that defendant took adverse action against [him], and (3) that there was a causal connection between the protected speech and the adverse action.'"  <u>Morales v. Mackalm</u>, 278 F.3d 126, 131 (2d Cir. 2002) (quoting <u>Dawes v. Walker</u>, 239 F.3d 489, 492 (2d Cir. 2001)).

The filing and prosecution of a lawsuit is a constitutionally protected activity.  <u>See</u> <u>Bennett v. Goord</u>, 343 F.3d 133, 137 (2d Cir. 2003).  Court records show that Ziemba filed several cases prior to the October 1999 incident.

To show that he was subjected to an adverse action, Ziemba must show that he was subjected to "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" because he filed lawsuits.  <u>Morales</u>, 278 F.3d at 131 (citation and internal quotation marks omitted).  The court need not consider whether the allegedly retaliatory conduct, including being confined in four-point restraints and subjected to the use of a chemical

11

agent, would deter a similarly situated inmate from proceeding
with his lawsuits.  Even if the court were to agree with Ziemba's
characterization of events, he has not presented any evidence to
support a finding of the required causal connection between the
actions and his litigation.

Ziemba's arguments are based upon his generalized assertions
of repeated retaliatory acts.  Ziemba characterizes every
incident as retaliatory, but provides no evidence supporting his
opinion that all of the actions were taken in retaliation for his
litigation activities.

Specifically, on September 9, 1999, Ziemba filed a grievance
alleging that Captain Rodriguez lied when he said that Ziemba
never complained that the cell intercom was turned off so he
could not request medication.  The same day, he filed a second
grievance alleging that Major Coates and other staff members
refused to give him his glasses and that defendant Myers failed
to stop retaliation and act on his correspondence.  Neither
grievance contains any specific evidence that the actions in
question were done in retaliation for Ziemba's litigation
activities.  (See Pl.'s Mem. Ex. 14-15.)

On September 27, 1999, Ziemba filed a grievance claiming
that Correctional Officer Jackson had tampered with his food on
September 15, 1999, and the supervisor would not save the

evidence.  He filed a second grievance on this claim on
October 26, 1999.  Again, Ziemba provided no evidence of
retaliation.  (See Pl.'s Mem. Ex. 16.)

On September 20, 1999, Ziemba filed a general grievance
stating that Wardens Murphy and Myers were not stopping the
retaliation.  He did not identify any specific acts or include
any evidence demonstrating a retaliatory motive.  (See Pl.'s Mem.
Ex. 17.)

On September 22, 1999, Ziemba filed a grievance stating that
he was placed unclothed in four-point restraints.  For relief,
Ziemba states "stop promoting the vengeful retaliation."  (Pl.'s
Resp. Ex. 17.)  The grievance was denied because Ziemba was
provided a blanket and boxer shorts.  Ziemba characterizes the
action as retaliatory but provides no support.

On October 4, 1999, Ziemba filed a grievance because a
shackle was placed on his leg in the recovery room at the
University of Connecticut Health Center following surgery on his
foot.  Ziemba states that Guard Pepe said that he deserved to be
in pain because he was suing Pepe.  Ziemba repeats this assertion
in his affidavit.  (See Pl.'s Mem. Ex. 18.)

On September 29 and October 1, 3 and 4, 1999, Ziemba filed
emergency grievances because he was confined in a cell with a
broken toilet.  Although he characterized this confinement as

13

retaliatory, he provides no evidence to support his opinion. (See Pl.'s Mem. Ex. 19.)

On October 29, 1999, Ziemba filed a grievance stating that the cell in which he was confined in four-point restraints on October 6, 1999 had a clogged toilet. Although Ziemba argues that the videotape of the incident supports his grievance, no problem with the toilet can be seen on the videotape. On November 6, 1999, Ziemba filed a grievance claiming that four-point restraints had been used on October 6, 1999 only as a punitive measure. Finally, on November 22, 1999, Ziemba filed a grievance stating that he was confined in four-point restraints on October 6, 1999, without adequate clothing. This grievance was denied because the administrative directive included a paper gown and paper sheet within the meaning of adequate clothing. Ziemba's claim that this incident was retaliatory is based upon his claim that defendant Clark orchestrated the confinement in retaliation for being named in Ziemba v. Armstrong, No. 3:98cv2344. As indicated above, defendant Clark did not learn that she was included as a defendant in that suit until one year later. (See Pl.'s Mem. Ex. 21-23.)

The courts examine claims of retaliation with care. See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). See also Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (holding

14

that the court may dismiss, based upon the pleadings alone, a complaint alleging retaliation in wholly conclusory terms). Ziemba characterized all actions by correctional staff as retaliatory.  In all except one instance, Ziemba fails to identify the specific correctional officer involved or any facts showing that the action was taken in retaliation for litigation.

Ziemba does allege in the grievance that Guard Pepe put tight shackles on his leg in retaliation for being named in a lawsuit.  In his affidavit, he states that "around" October 6, 1999, Captain Faneuff told him that "they" were going to make Ziemba sorry for suing the Department of Correction.  (See Pl.'s Aff. at ¶ 27.)

The court has examined the docket sheets of all the cases filed by Ziemba.  Robert Pepe is named as a defendant in Ziemba v. Butler, No. 3:03cv1241 (AWT).  Even if Robert Pepe and Guard Pepe are the same person, that case was not filed until July 2003, over three years after the alleged statement by Guard Pepe. Thus, Ziemba's allegation is not supported by the court's records.  In addition, the court has consulted the Connecticut Judicial Branch website.  Ziemba has filed in state court only two habeas corpus actions.  Accordingly, there is no basis for Ziemba's characterization of Pepe's conduct as retaliation for Ziemba suing Pepe.

The court concludes that, except for the alleged statement by Captain Faneuff, Ziemba has not presented any evidence to support his claims of retaliatory conduct.  As to the alleged statement by Captain Faneuff, that is insufficient to support a claim of retaliation; one is left to speculate about any connection between Captain Faneuff's comment and any adverse action by other Department of Correction personnel against Ziemba.  Without sufficient evidence of retaliatory acts, there is no basis for claims of supervisory liability against defendants Armstrong and Myers.  Accordingly, the defendants' motion for summary judgment is being granted as to the claims against defendants Armstrong and Myers.

IV.  <u>Conclusion</u>

Defendants' Motion for Summary Judgment [**doc. #58**] is hereby **GRANTED**.  The Clerk is directed to enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated this 15th day of March 2005, at Hartford, Connecticut.


                                    _____
                                              /s/
                                         Alvin W. Thompson
                                    United States District Judge




                                        16